IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NEAL T. HOWLETT, | ) | CASE NO. 5:11 CV 902 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action by Neal T. Howlett under 42 U.S.C. § 405(g) seeking judicial review of the decision by the Commissioner of Social Security denying Howlett's applications for disability insurance benefits (DIB) and supplemental security income (SSI).[2] The Commissioner has filed an answer[3] and the transcript of proceedings before the Social Security Administration.[4] In conformity with my procedural order,[5] each side has briefed its

---

[1] The parties have consented to my exercise of jurisdiction (ECF # 15), and United States District Judge Dan Aaron Polster has accordingly ordered this case transferred to me for further proceedings and entry of judgment. ECF # 17.

[2] ECF # 1.

[3] ECF # 11.

[4] ECF # 12.

[5] ECF # 16.

position[6] and filed supplemental fact sheets or charts.[7] The parties have participated in oral argument.[8]

On that record, and under the applicable law, I will find, for the reasons that follow, that the Commissioner's decision is supported by substantial evidence and so will be affirmed.

## Facts

**A.      The decision of the Commissioner**

The Administrative Law Judge (ALJ), whose decision became the final decision of the Commissioner after the Appeals Council denied a request for review,[9] made the following findings concerning Howlett:

- he was divorced, is presently unmarried and living with his parents;[10]

- he was 53 years old at the time of the hearing;[11]

- he had a high school education;[12]

---

[6] ECF # 18 (Commissioner's merit brief); ECF # 19 (Howlett's merit brief).

[7] ECF # 13 (Howlett's fact sheet); ECF # 18, Attachment (Commissioner's charts).

[8] ECF # 21.

[9] *See*, Tr. at 1-3.

[10] *Id*. at 19.

[11] *Id*. at 21.

[12] *Id*.

- for 22 years he had performed unskilled work as a unionized employee of Chrysler;[13] and

- he has severe impairments as regards affective disorder, variously diagnosed as depression and bipolar disorder; as well as post traumatic stress disorder.[14]

Essentially, Howlett testified that he was fired in 2006 "because of multiple confrontations with co-workers, management, and union representatives" that occurred as a result of his "inability to control his bipolar symptoms."[15] In that regard, Howlett testified that he has "a short temper and is easily angered;" that he has a difficult time interacting with, or accepting direction from, male authority figures; and that his manic and depressive cycles have become more frequent as well as more severe.[16]

However, the ALJ discounted Howlett's statements concerning the intensity, persistence, and limiting effects of his bipolar disorder.[17] The ALJ found first that Howlett had been able to work at Chrysler for some time with bipolar disorder and post traumatic stress.[18] Moreover, the ALJ observed that treatment notes from Portage Path Behavioral Health Center (PPBH) – where Howlett has been treated since July, 2007 – show that his

---

[13] *Id.*

[14] *Id.* at 16.

[15] *Id.* at 18.

[16] *Id.*

[17] *Id.* at 18-19.

[18] *Id.* at 19.

-3-

mood is stable when on medications that he tolerates well.[19] The ALJ noted that this was also the conclusion reached by the therapist who treated Howlett prior to 2007.[20] In addition, the ALJ found that Howlett's daily activities were inconsistent with his claims.[21]

As for opinion evidence, the ALJ, for differing reasons, gave little weight to an opinion from a psychiatrist who treated Howlett from 2001-2005, as well as to an opinion from Howlett's treating psychiatrist at PPBH.[22] By contrast, the ALJ gave significant weight to the opinion from the State consulting psychiatrist and to a vocational rehabilitation test completed by Howlett.[23]

Based on those determinations, the ALJ found that Howlett had the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> Mr. Howlett is limited to unskilled work involving only simple, repetitive tasks. He is also limited to low stress work, that is, work that does not involve high production quotas. He should have no interaction with the public. Finally, Mr. Howlett is limited to no more than superficial interaction with co-workers and supervisors and he needs to work alone in his actual job duties.[24]

---

[19] *Id*.

[20] *Id*.

[21] *Id*.

[22] *Id*. at 20.

[23] *Id*. at 20-21.

[24] *Id*. at 17-18.

In order to determine the extent to which the limitations of the RFC eroded the occupational base of jobs available to Howlett, the ALJ enlisted the testimony of a vocational expert (VE).[25] Given the factors contained in the RFC, the VE testified that Howlett would be able to work as a laundry worker, a warehouse worker, and as a janitor.[26] The VE further testified that jobs in all those areas existed in significant numbers in the local, state, and national economies.[27]

The ALJ thereupon concluded that Howlett was not disabled and denied his application.[28]

## B.    Issues on judicial review

Howlett raises the following four issues on judicial review:

1.    Are the ALJ's RFC finding(s) and the hypothetical posed to the VE supported by substantial evidence?[29]

2.    Does substantial evidence support the finding that – given the RFC included in the hypothetical to the VE – Howlett could perform the jobs identified by that expert?[30]

---

[25] *Id*. at 21-22.

[26] *Id*. at 22.

[27] *Id*.

[28] *Id*.

[29] ECF # 19 at 2.

[30] *Id*. at 5.

-5-

3.      Does substantial evidence support the ALJ's decision not to give controlling weight to the opinions of Dr. Melodie Morgan-Minitt and of Dr. Hem Sharma, treating sources?[31]

4.      Does substantial evidence support the ALJ's finding that Howlett's statements about the persistence and limiting effect of his impairments are not credible to the extent inconsistent with the RFC finding?[32]

## Analysis

**A.      Standards of review**

*1.      Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[33]

---

[31] *Id.*

[32] *Id.* at 11.

[33] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[34] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[35]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2.    *Treating source/good reasons*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[36]

---

[34] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[35] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[36] 20 C.F.R. § 404.1527(d)(2).

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[37]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[38] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[39]

The regulation does cover treating source opinions as to a claimant's limitations and work-related capacity in light of those limitations.[40] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[41] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[42] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[43]

---

[37] *Id.*

[38] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[39] *Id.*

[40] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[41] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[42] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[43] *Id.* at 535.

In *Wilson v. Commissioner of Social Security*,[44] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[45] The court noted that the regulation expressly contains a "good reasons" requirement.[46] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[47]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[48] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[49] The former confers a substantial, procedural right on

---

[44] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[45] *Id.* at 544.

[46] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[47] *Id.* at 546.

[48] *Id.*

[49] *Id.*

-9-

the party invoking it that cannot be set aside for harmless error.[50] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[51]

The opinion in *Wilson* sets up a three-part requirement for articulation against which an ALJ's opinion failing to assign controlling weight to a treating physician's opinion must be measured. First, the ALJ must find that the treating source's opinion is not being given controlling weight and state the reason(s) therefor in terms of the regulation – the absence of support by medically acceptable clinical and laboratory techniques and/or inconsistency with other evidence in the case record.[52] Second, the ALJ must identify for the record evidence supporting that finding."[53]  Third, the ALJ must determine what weight, if any, to give the treating source's opinion in light of the factors listed in 20 C.F.R. § 404.1527(d)(2).[54]

In a nutshell, the *Wilson* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive

---

[50] *Id.*

[51] *Id.*

[52] *Wilson*, 378 F.3d at 546.

[53] *Id.*

[54] *Id.*

-10-

controlling weight.[55] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[56] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[57] or that objective medical evidence does not support that opinion.[58]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[59] The Commissioner's *post hoc* arguments on judicial review are immaterial.[60]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment.

---

[55] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

[56] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[57] *Hensley v. Astrue*, 573 F.3d 263, 266-67 (6th Cir. 2009).

[58] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[59] *Blakley*, 581 F.3d at 407.

[60] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[61]

- the rejection or discounting of the weight of a treating source without assigning weight,[62]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[63]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[64]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[65] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[66]

---

[61] *Blakley*, 581 F.3d at 407-08.

[62] *Id.* at 408.

[63] *Id.*

[64] *Id.* at 409.

[65] *Hensley*, 573 F.3d at 266-67.

[66] *Friend*, 375 F. App'x at 551-52.

-12-

The Sixth Circuit in *Blakley v. Commissioner of Social Security*[67] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[68] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[69]

In *Cole v. Astrue*,[70] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[71]

## B.  Applications of standards

### 1.  *Substantial evidence supports the RFC finding and thus supports the hypothetical based on the RFC.*

Howlett's arguments here are essentially that the ALJ should have included two additional limitations in the RFC and then the hypothetical: (1) that Howlett could not

---

[67] *Blakley*, 581 F.3d 399.

[68] *Id*. at 409-10.

[69] *Id*. at 410.

[70] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[71] *Id*. at 940.

interact with anyone on the job, and (2) that Howlett would be moderately limited in his ability to complete a workday or workweek without interruptions from his symptoms, and to perform at a consistent pace without an unreasonable number and length of rest breaks.[72]

As to the first issue, he contends that such a limitation on interacting with anyone is supported by the opinion of the State reviewing psychiatrist, to which the ALJ gave significant weight.[73] As such, Howlett asserts that the ALJ improperly "cherry-picked" Dr. Dietz's opinion so that he could use only favorable items while ignoring unfavorable ones – and did so without giving any good reason for why the omitted factor was not used in the RFC.[74]

I note first that Dr. Dietz's opinion does state that Howlett "is not able to interact with others, and needs to work alone."[75] If taken strictly, that opinion would likely make Howlett unemployable. The Commissioner, however, maintained at oral argument that the ALJ reasonably incorporated Dr. Dietz's opinion in that portion of the RFC providing that Howlett should have no interaction with "the public," while being limited to no more than "superficial" interaction with co-workers or supervisors.[76]

---

[72] ECF # 19 at 2.

[73] *Id.* at 3.

[74] *Id.*

[75] Tr. at 369.

[76] *See*, Tr. at 18.

It should be noted that in addition to the opinion of Dr. Dietz, the ALJ also gave significant weight to a vocational rehabilitation assessment conducted in 2007.[77] That assessment concluded that although Howlett was a "slow worker" who had "difficulty understanding instructions" and "became frustrated easily," he nevertheless "satisfies the majority of aptitude levels for a wide range of jobs."[78] The ALJ made a point of stating that this assessment was "consistent" with both the objective medical evidence and Howlett's activities.[79] Thus, the ALJ noted, the observations made during the assessment were incorporated into the RFC finding.[80]

On that record, I observe first that Dr. Dietz is not a treating source but rather a state reviewing source.[81] As such, his opinion does not carry with it the procedural presumptions accorded to treating sources. Further, it is clear that while Dr. Dietz's opinion was accorded great weight, that is not the same as controlling weight. As noted, the ALJ also gave the vocational rehabilitation assessment great weight in fashioning the RFC and ultimately formulated the RFC from what was consistent in the medical evidence, Howlett's activities, Dr. Dietz's opinion, and the rehabilitation assessment. As the Commissioner states, an RFC assessment, by regulation, must be based on a review – such as was done here – of the

---

[77] Tr. at 20-21.

[78] *Id*. at 21.

[79] *Id*.

[80] *Id*.

[81] *Id*. at 353.

-15-

medical evidence, the opinion evidence, and the circumstantial evidence of the claimant's activities.[82]

In addition, the formulation as done here is fully in accord with the rubric that the RFC remains the province of the Commissioner as an administrative finding and is not a medical opinion.[83] Further, the regulations also provide that Dr. Dietz's observation on interaction with others was not entitled to any special significance – let alone controlling weight – in the ALJ's review of all relevant source evidence.[84] Finally, the ALJ's RFC finding here was made and articulated such that meaningful review was possible.

As to the second issue – whether the RFC should have included some additional restriction to the effect that Howlett would have to be off task for a certain percentage of the workday – I first incorporate by reference the preceding discussion as to the formulation of the RFC in this instance. I extend that discussion to note that since *Ealy v. Commissioner*[85] was decided by the Sixth Circuit in 2010, the precedent in this Circuit and District appears to be that where a claimant is moderately deficient as to concentration, persistence, or pace, such a deficiency, standing alone, is adequately addressed by an RFC, such as this one,

---

[82] ECF # 18 at 10 (citing regulations).

[83] *Id*. (citing regulations).

[84] *Id*. (citing regulations).

[85] *Ealy v. Commissioner*, 594 F.3d 504 (6th Cir. 2010).

restricting the claimant to simple repetitive tasks, with no production quotas and low stress.[86] On the other hand, a finding of specific speed or pace restrictions, or durational restrictions, such as was the case in *Ealy*, will require additional limitations to that end in the RFC.[87]

At issue here is Dr. Dietz's notation that Howlett has a "moderate" limitation with respect to maintaining concentration, persistence, or pace.[88] No other specific speed or pace or durational restrictions are given. So, although Howlett seeks to argue with pre-*Ealy* authority that Dr. Dietz's limitation, standing alone, should require additional limitations in the RFC,[89] I find, along the lines I set forth in *Raymond v. Commissioner of Social Security*,[90] that the RFC adequately provides for the limitation noted by Dr. Dietz.

Accordingly, I find that the RFC in this case is supported by substantial evidence, that the hypothetical posed to the VE based on the RFC was, therefore, proper, and thus that the Commissioner's decision in this regard is affirmed.

## 2.   *Substantial evidence supports the finding that Howlett could perform the jobs identified by the VE.*

Again, Howlett here seeks to undermine the testimony of the VE by claiming that because the hypothetical posed to the VE did not "accurately represent" Howlett's

---

[86] *See*, *Raymond v. Comm'r of Soc. Sec.*, No. 1:11 CV 156, 2012 WL 2872152, at *3 (N.D. Ohio June 4, 2012) (citing *Ealy*, 594 F.3d at 516).

[87] *Id*.

[88] Tr. at 363.

[89] ECF # 19 at 4 n.1.

[90] *Raymond*, 2012 WL 2872152.

-17-

limitations, the conclusion of the VE must necessarily be tainted and invalid.[91] As discussed above, however, the RFC was properly formulated as a result of the ALJ correctly following the applicable regulations in a way that was clearly articulated and readily reviewable.

In addition, as set forth by the Commissioner, each of the jobs identified by the VE has a specific vocational preparation (SVP) rating of 2 in the Dictionary of Occupational Titles (DOT), which rating is consistent with the RFC finding that Howlett can do unskilled work.[92]

Finally, it is recognized that an ALJ may rely on the expert testimony of a VE to the effect that a claimant can perform jobs identified in response to a hypothetical.[93]

Accordingly, the Commissioner's finding as to Howlett's capacity to perform the jobs identified is supported by substantial evidence.

**3.**    ***Substantial evidence supports the decision to accord the weight given to the various medical sources, and that decision conforms to the requirements of the treating source/good reasons rule.***

Howlett here makes two arguments: (1) the ALJ gave poor reasons for not assigning controlling weight to the opinions of two treating source physicians, Dr. Morgan-Minitt and

---

[91] ECF # 19 at 5.

[92] ECF # 18 at 13.

[93] *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, at *5 (6th Cir. 2002) (citing *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987).

Dr. Hem Sharma;[94] and (2) the ALJ erred in giving significant weight to the opinion Dr. Dietz, the state consulting psychiatrist.[95]

As regards Dr. Morgan-Minitt, the ALJ gave three reasons for discounting her opinion that Howlett was disabled.

First, the ALJ observed the Dr. Morgan-Minitt's statements conflicted with each other.[96] In that regard , the ALJ noted that when asked to describe how Howlett's symptoms restrict his activities, Dr. Morgan-Minitt simply responded at section three of the questionnaire: "Can't work."[97] But, as the ALJ then noted, Dr. Morgan-Minitt answered the very next question about "describing the effects" of his impairment on his daily activities: "ADL OK."[98]

Next, the ALJ observed that Dr. Morgan-Minitt's opinion was based on notes taken during the period 2001 to 2005, which was while he was employed[99] and, which I note, was also prior to the alleged onset date of 2006.[100]

---

[94] ECF # 19 at 7-9.

[95] *Id*. at 9-11.

[96] Tr. at 20.

[97] *Id* at 347.

[98] *Id*.

[99] *Id*.

[100] *Id*. at 14.

Finally, the ALJ discounted Dr. Morgan-Minitt's opinion because opinions as to the ultimate question of disability are administrative findings reserved to the Commissioner.[101]

In addressing the treatment of this physician's opinion, I note first that Howlett objects to the ALJ finding that Dr. Morgan-Minitt's opinion was based on information obtained while he was employed. He asserts that the ALJ was in error as to that point.[102] Actually, it appears that Howlett misunderstood the ALJ's finding. While it is true that Dr. Morgan-Minitt completed the form in 2007, or well after Howlett had stopped working, the form itself indicates that Dr. Morgan-Minitt's notes were from observations of Howlett made between September 4, 2001 and October 27, 2005 – or when he was employed at Chrysler.[103]

Thus, I find that the ALJ properly made the observation that Dr. Morgan-Minitt's opinion that Howlett "can't work" is not consistent with the fact that he was working during the time he was treated by Dr. Morgan-Minitt. As such, that is a sufficient basis, clearly articulated, for not ascribing controlling weight to the opinion of Dr. Morgan-Minitt.

As to the opinion of Dr. Sharma, the ALJ discounted that opinion largely because the ALJ concluded that Dr. Sharma provided that opinion for the purpose of securing a disability pension for Howlett from Chrysler.[104] While Howlett correctly contends that the purpose for rendering the opinion is irrelevant, the fact is that the form completed by Dr. Sharma is a

---

[101] *Id.*

[102] ECF # 19 at 7.

[103] Tr. at 346.

[104] Tr. at 20.

UAW/Chrysler form where the physician is directed to answer the question of whether an applicant is disabled "as defined in the pension plan."[105] It was not improper for the ALJ to take note of that fact and discount Dr. Sharma's ultimate conclusion of total disability.

I also note that like Dr. Morgan-Minitt, Dr. Sharma here specifically stated that Howlett's impairment was likely to respond to treatment, while also opining that he was nevertheless totally disabled.[106] Thus, leaving aside the conclusion about disability under the UAW/Chrysler plan, and leaving aside that the ALJ might have discounted Dr. Sharma's opinion as inconsistent, as was done with Dr. Morgan-Minitt's, the plain fact is that Dr. Sharma's strictly medical opinion of Howlett's condition is that Howlett has bipolar disorder that is likely to respond to known treatment.[107] Therefore, even if the ALJ should have articulated this point more clearly, it is frankly difficult to see how a remand directing the ALJ to assign controlling weight to Dr. Sharma's sole medical opinion that Howlett has an impairment that is likely to respond to treatment helps Howlett. In this case, I find that the error, if any, was harmless.

As to the final argument here – that the ALJ erred in giving great weight to the opinion of Dr. Dietz – I note, as does the Commissioner, that the regulations provide that the opinions of state agency consultants are entitled to weight because of their expertise in

---

[105] Tr. at 535.

[106] *Id.*

[107] As the Commissioner observes, Dr. Sharma's conclusion on this UAW/Chrysler form that Howlett's condition responds well to treatment is reflected in multiple places in his treatment notes. *See*, ECF # 18 at 15 (citing transcript).

evaluating disability claims.[108] In this case, the ALJ complied with the good reasons rule by articulating a specific weight to be given to Dr. Dietz's opinion and then providing clear, reviewable reasons for making that assignment. Because I find no error in the application of this rubric in the present matter, I find that the decision here is supported by substantial evidence and is, therefore, affirmed.

### 4. Substantial evidence supports the decision to find Howlett not fully credible as to the intensity, persistence and limiting effects of his symptoms.

As to the argument on credibility, I note that again that the objective evidence from multiple medical sources, as recounted by the ALJ, show that Howlett's impairment was stable when he was on his medication – medication that he tolerated well.[109] Progress notes from his therapy at PPBH, also cited by the ALJ, indicate positive effects and reflect that there have been no long term hospitalizations for psychiatric treatment.[110] Objective evidence from the rehabilitation assessment, cited earlier by the ALJ, showed that while Howlett had some limitation in speed, frustration, and understanding, he otherwise satisfied the majority of aptitude levels required for a "wide range of jobs."[111]

---

[108] ECF # 18 at 16 (citing regulations).

[109] Tr. at 19.

[110] *Id.*

[111] *Id.* at 21.

-22-

Thus, it is not correct to assert, as does Howlett, that the ALJ "mainly" discounted Howlett's credibility by reference to pointing to his past ability to work.[112] In fact, as discussed above, the ALJ mostly relied on objective evidence to conclude that Howlett's complaints about the limiting effects of his symptoms were not fully credible. As I related in detail in *Cross v. Commissioner of Social Security*,[113] this approach of relying first on the objective evidence before considering the circumstantial evidence of daily activities is proper under the applicable standards. Thus, when an ALJ, as here, performs such an analysis in a way so as to provide good reasons for the decision in a way that facilitates meaningful judicial review, the conclusion, for which the ALJ has "broad discretion," will be found, as in this case, to be supported by substantial evidence and affirmed

## Conclusion

For the foregoing reasons, I find that the Commissioner's decision denying Neal Howlett's applications for benefits is supported by substantial evidence and is, therefore, affirmed.

IT IS SO ORDERED.

Dated: September 28, 2012                    s/ William H. Baughman, Jr.
                                             United States Magistrate Judge

---

[112] ECF # 19 at 12.

[113] *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724 (N.D. Ohio 2005).

-23-